# Butler *v.* Kemmerer, Appellant.

*·Contract—Offer—Acceptance—Terms—Price.*

To form the basis of a legal obligation, an offer must be so complete that upon acceptance an agreement is formed which contains all the terms necessary to determine whether the contract has been performed or not.

Price is as essential as any other of the terms of a contract, and without this agreed upon no contract exists.

A promise made by a heavy stockholder of a corporation to an officer of the company that if any profit is made out of the business of the company, he will divide such profit upon a very liberal basis with the officer, is too indefinite and uncertain to be enforced.

Argued March 11, 1907. Appeal, No. 285, Jan. T., 1906, by defendant, from judgment of C. P. Carbon Co., Oct. T., 1905, No. 24, on verdict for plaintiff in case of H. A. Butler v. M. S. Kemmerer. Before FELL, BROWN, MESTREZAT, POTTER and ELKIN, JJ. Reversed.

Assumpsit on an alleged contract to share profits. Before HEYDT, P. J.

The facts are stated in the opinion of the Supreme Court.

*Error assigned* among others was in refusing binding instructions for defendant.

*John McGahren* and *John G. Johnson,* with them *W. W. Watson, William G. Freyman* and *E. O. Nothstein,* for appellant.—The conversations testified to by the plaintiff did not constitute a contract and it was the duty of the court to determine the meaning and pass upon the legal effect of it: Brown v. Finney, 53 Pa. 373; MacMackin v. Timmins, 14 W. N. C. 318; Wistar's App., 80 Pa. 484; Penn Twp. School Dist. v. Snyder, 5 Pa. Superior Ct. 228; Purves's Estate, 196 Pa. 438; Graham v. Graham's Exrs., 34 Pa. 475; Wall's Appeal, 111 Pa. 460; Pollock v. Ray, 85 Pa. 428; Smith v. Ankrim, 13 S. & R. 39; Sherman v. Kitsmiller, 17 S. & R. 45; Mays v. Patterson, 20 Pa. Superior Ct. 92; United Press v. N. Y. Press

Co., 53 L. R. A. 288; Scott v. Fuller, 3 P. & W. 55; Thompson v. Stevens, 71 Pa. 161.

*Edward Harvey* and *Laird H. Barber*, with them *Frederick Bertolette*, for appellee.—The contract was not uncertain: Weaver v. Wood, 9 Pa. 220; Thompson v. Stevens, 71 Pa. 161; Cottrell's Est., 2 W. N. C. 83; Harper's Est., 196 Pa. 137; Sutliff v. Seidenberg, 132 Cal. 63 (64 Pac. Repr. 131); Elder v. Robinson, 19 Pa. 364; Pennsylvania Co. v. Dolan, 6 Ind. App. 109 (32 N. E. Repr. 802); Minnesota Lumber Co. v. Whitebreast Coal Co., 160 Ill. 85 (43 N. E. Repr. 774).

OPINION BY MR. JUSTICE POTTER, May 20, 1907:

The inquiry which meets us on the threshold of this case is whether or not the alleged contract between the parties was complete. The element which is lacking is that of price or basis upon which, under the alleged agreement, the profit accruing to the defendant from the business was to be divided. The plaintiff and defendant were in no sense of the word partners. In 1890, H. A. Butler, the plaintiff, became private secretary of M. S. Kemmerer, the defendant, at a yearly salary of $1,500, and continued to act in that capacity up to the time of the bringing of this suit. Mr. Kemmerer was at that time largely interested as a stockholder in the Carbon Iron and Pipe Company, Limited, which was engaged in the manufacture of pig iron at Parryville. In 1891 the business of this concern was wound up, and all its assets were transferred to, and its liabilities were assumed by, Mr. Kemmerer. On January 5, 1892, The Carbon Iron and Steel Company, Limited, was organized as the successor of the former company, with a capital stock of $250,000, of which $230,000 was duly subscribed by Mr. Kemmerer, $50,000 in cash, and the balance in real and personal property, at a valuation approved by all the members of the company.

In addition to his duties as private secretary to Mr. Kemmerer, the plaintiff was appointed secretary and treasurer of the steel company. The controversy in this case grows out of the subsequent relations between the plaintiff and defendant, with regard to the management of the business of the company. The claim made by Mr. Butler is a peculiar one.

It rests upon services which were rendered as an employee of the steel company, but as Mr. Kemmerer was the principal stockholder and was very largely interested therein, the services to the company inured indirectly to the benefit of Mr. Kemmerer individually.

It appears from the evidence that on September 4, 1893, Mr. Butler wrote a letter to Mr. Kemmerer, in which he stated that his position lacked the permanence he would like; and that owing to his lack of capital, he could not hope to hold any very extensive interest in as large an enterprise as a furnace plant; and that he would feel safer if associated with something of less financial proportions. He then suggested that the firm of H. A. Butler & Co. be established, with a capital of $20,000 or $25,000, of which he could hold a one-half interest; this to include a store, an iron wharf, and a general commission business for the sale of grain, hay, lumber and other supplies. He stated that this would, in the whole, make a very safe and clean business, and that he would much prefer to have a larger interest in one such enterprise than to hold a number of smaller interests in several different concerns. The arrangement which he asked for in this connection did not contemplate the contribution of any money by himself, but he asked that he be credited upon the books with a one-half interest in the capital stock, and charged with the same amount upon the books as a loan.

The suggestion of Mr. Butler, as contained in this letter to Mr. Kemmerer, was not acceptable to the latter. Mr. Butler testifies that Mr. Kemmerer said to him that he preferred that his time and attention should be given to the general conduct of the business. That if this were done, he should be well compensated, and that if there were any profits made in the business, he would divide them upon a very liberal basis with Mr. Butler. The plaintiff did continue to devote his time and services to the conduct of the business of the steel company, but not exclusively by any means, for he had sufficient leisure to enable him to look after a number of other interests, of a minor nature, in addition to the service which he rendered as private secretary for Mr. Kemmerer; and for all these services he was suitably compensated. But by reason of the fact that under his general oversight and management, the business of

the company became in time successful, and eventually showed a profit; and because that profit resulted in an individual benefit to Mr. Kemmerer, as a large stockholder in the company, the plaintiff claims that under the agreement this profit was to be divided with him by Mr. Kemmerer. In other words, his claim is that in addition to the services which he rendered to the steel company, and for which he was paid by it, as they were rendered, he is entitled to share with Mr. Kemmerer the profit which accrued to Mr. Kemmerer by reason of the fact that he was a stockholder in the steel company. In discharging his duty to the company, the plaintiff naturally benefited its stockholders, of whom Mr. Kemmerer was chief.

It must be remembered that the question involved is not the value of the services. If that were the issue, it might fairly be ascertained by evidence, and fixed by the jury. But there is nothing in the case from which we can infer that the amount to be paid to the plaintiff would be based upon a quantum meruit. The question is—admitting the truth of the plaintiff's statement that Mr. Kemmerer agreed to divide with him his profits—how, or upon what basis, was that division to be made? Admittedly, this basis was never agreed upon or fixed by the parties. The plaintiff testifies that they never arrived at any basis which could be put on paper, and that it was always uncertain and undetermined. He gives this as an excuse for not making any definite claim as to this particular, in the bills for services, which he was periodically rendering, and which were promptly paid. It is apparent that the forms of corporate management were largely ignored in the conduct of the business, and that Mr. Kemmerer was, for all practical purposes, regarded as the only stockholder necessary to consult. The by-laws of the steel company were ignored, and neither meetings of directors or stockholders were formally held. As private secretary, Mr. Butler looked after the personal and allied interests of Mr. Kemmerer, and those of some of the members of his family. His salary as private secretary was fixed at $1,500 in 1890, and to this was added opportunity for rendering other service yielding compensation, and gifts were also made from year to year, showing esteem and appreciation, until, in the year 1903, he received from these sources a total sum of $10,740, and during the period from 1890 to 1905, he

received in salaries and gifts an aggregate of more than $62,000. It is suggested in the argument of counsel for appellant that these payments of largely increased compensation and the gifts which were made, may fairly be regarded as the fulfillment of any promise of liberal treatment made to the plaintiff by the defendant.

But however that may be, our concern is as to the incompleteness of the alleged contract. To form the basis of a legal obligation, an offer must be so complete that upon acceptance an agreement is formed which contains all the terms necessary to determine whether the contract has been performed or not: Page on Contracts, sec. 27. Price is as essential as any other of the terms of a contract, and without this agreed upon no contract exists: State v. Associated Press, 159 Mo. 410. An indefinite or uncertain contract cannot be enforced: Purves's Estate, 196 Pa. 438; Graham v. Graham's Exrs., 34 Pa. 475. A promise made by a decedent in his lifetime, in consideration of services to be rendered, to provide at his death for the person rendering such services, and to give her a portion of his estate, is too indefinite and uncertain to be enforced: Wall's Appeal, 111 Pa. 460. An agreement by a landlord to reduce the rent, without naming the amount of reduction, is too uncertain to be enforced: Smith v. Ankrim, 13 S. & R. 39. A contract to take press reports for a term of years at not more than $300 per week, without other provision, is too indefinite to allow recovery for more than nominal damages for its breach: United Press v. Press Co., 164 N. Y. 406.

A case very much like the present one in its facts is that of Mackintosh v. Kimball, 101 App. Div. (N. Y.) 494, where the plaintiff, who was in the employ of a firm of architects on a weekly salary gave notice to the firm that he intended to leave unless his salary was raised. He was told by one of the firm that the increase would be granted and they would make it worth while for him to stay; that if the plaintiff stayed on until the completion of certain buildings which defendants were engaged in constructing, they would give him an interest in the profits. Plantiff having asked what would be the amount of the increase in his salary, was told that he could rest assured that the amount would be large because of the enormous cost of the buildings. Plaintiff then asked how this

was to be arranged, and the member of the firm said: " You can depend upon me, I will see that you get a satisfactory amount." Plaintiff continued in the employ of defendants until after the completion of the buildings referred to, and until the dissolution of the partnership three years after the contract was alleged to have been made, but did not receive any increase in salary or any interest in the profits of defendant's business. Held, that the arrangement with the plaintiff was too indefinite to form the basis of any obligation on the part of the defendants. INGRAHAM, J., said (p. 497): " There was here nothing from which a promise could be inferred that what the plaintiff would receive would be based upon a quantum meruit. The defendants proposed in the future to make some agreement which would be satisfactory to the plaintiff, but no basis upon which such increased compensation was to be estimated was suggested, except a general statement that Kimball's idea was that the plaintiff was to be allowed some interest in the profits of the defendant's business. The whole arrangement as testified to was so indefinite that it could not be the basis of a recovery. In United Press v. N. Y. Press Co., 164 N. Y. 406, Judge GRAY delivering the opinion of the court, says: ' It is elementary in the law that, for the validity of a contract, the promise or the agreement of the parties to it must be certain and explicit, and that their full intention may be ascertained to a reasonable degree of certainty. Their agreement must be neither vague nor indefinite.' "

So also in Bumpus v. Bumpus, 53 Mich. 346, the suit was by a son against his parents to compel performance of an alleged contract to convey their farm to him in consideration of his remaining at home, managing the farm, furnishing the money for the education and support of a younger brother, and assisting him in getting a start in business. The plaintiff claimed to have executed his part of the agreement. Chief Justice COOLEY, in considering the contract, said (p. 349): " Whether parties making such a contract would contemplate a cost of $1,000 or $20,000, no one but themselves could say; for the one sum might in some cases be made to answer or the other be required. Courts cannot enforce such contracts; they must rest for their performance upon the honor and good faith of the parties making them."

In the present case, if the promise was made as alleged, that in case defendant made any profit out of the business of the steel company, he would divide it upon a liberal basis with the plaintiff, who can determine from that statement what share in the profit the plaintiff was to have? Was it five per cent., ten per cent., or fifty per cent.? Can it be said that the minds of the parties ever met in the agreement as to this point? ·Certainly not.

After a careful consideration of the evidence, we can reach no other conclusion than that the trial judge should have instructed the jury, as requested by counsel for defendant, that the terms of the alleged contract were never made complete, and were never fixed, and for that reason no recovery can be had in this case. It is clear from the testimony of the plaintiff that he repeatedly urged the defendant to agree upon the terms, but that he as often refused, and postponed the matter from time to time. The jury were not at liberty to fix or determine a basis for the division of the profit, when the parties themselves had failed to reach any agreement, as to that very material matter. Any such attempt by the jury would be nothing more than a guess or conjecture. There was no standard by which they could measure the degree of liberality with which the defendant should reward the plaintiff. As we have said more than once, it was not the reasonable value of services rendered which was in dispute. The plaintiff received that, in the salaries and other compensation given him. It was the basis for the payment of the bonus, or division of the profit, which was left vague, uncertain and undetermined.

We sustain the first, second, eleventh, thirteenth, fourteenth, nineteenth and twentieth assignments of error. As we dispose of the case upon the ground that the agreement was incomplete, it becomes unnecessary to consider other points raised by the appeal.

The judgment is reversed, and is here entered for the defendant.