**ALUMINUM SHAPES, INC., Plaintiff,**

v.

**K–A–LIQUIDATING COMPANY and Chamberlain Manufacturing Corporation, Defendants.**

**Civ. A. No. 66–1399.**

United States District Court
W. D. Pennsylvania.

Oct. 4, 1968.

Thorp, Reed & Armstrong, Pittsburgh, Pa., for plaintiff.

Weis & Weis, Pittsburgh, Pa., for K–A–Liquidating Co.

Eckert, Seamans & Cherin, Pittsburgh, Pa., for Chamberlain Mfg. Co.

## OPINION

DUMBAULD, District Judge.

On January 22, 1965, plaintiff contracted "to supply Keystone Alloys Company with their entire aluminum extrusion needs for a period of one year" and to purchase all aluminum extrusion scrap generated at Keystone's plant in Derry. This type of contract, although inherently suspect from the antitrust standpoint, must be distinguished from a "tying clause" agreement, and is presumably justifiable on the grounds of affording the parties price stability, assured supply, and similar legitimate business needs. Standard Oil Co. of California and Standard Stations, Inc. v. U. S., 337 U.S. 293, 305–307, 69 S.Ct. 1051, 93 L.Ed. 1371 (1949); Tampa Electric Co. v. Nashville Coal Co., 365 U.S. 320, 327, 81 S.Ct. 623, 5 L.Ed.2d 580 (1961).

On or about June 1, 1965, Keystone evinced dissatisfaction over defective materials and delay in delivery and notified plaintiff that the contract was canceled and no further material would be accepted.

On November 23, 1966, plaintiff sued Keystone for breach of the contract.

During discovery plaintiff learned that defendant by an agreement dated September 26, 1966, amended October 28, 1966, disposed of substantially all its assets to Chamberlain Manufacturing Corporation, and changed its name to K–A–Liquidating Company. Plaintiff on July 11, 1967 filed its amended complaint naming these two companies as defendants, and setting forth *inter alia* allegations charging violation of the bulk sales provisions of the Uniform Commercial Code (12A P.S. § 6–101 et seq.).

On April 12, 1968, defendant Chamberlain filed the instant motion for summary judgment, asserting, *inter alia*, the defense that suit was not brought within six months after the transfer as required by 12A P.S. § 6–111. This section provides: "No action under this Article shall be brought more than six months after the date on which the transferee took possession of the goods unless the transfer has been concealed. If the transfer has been concealed actions may be brought within six months after its discovery."

It is clear from 12A P.S. § 6–102(3) that the bulk sales act applies to manufacturers as well as traders, although the central purpose of such laws as stated in the comment, is to "deal with two common forms of commercial fraud, namely:

(a) The merchant, owing debts, who sells out his stock in trade to a friend for less than it is worth, pays his creditors less than he owes them, and hopes to come back into the business through the back door some time in the future.

(b) The merchant, owing debts, who sells out his stock in trade to any one for any price, pockets the proceeds, and disappears leaving his creditors unpaid."

■ The policy of the act thus does not cover a legitimate change in the type of business organization, inspired by tax considerations or other bona fide business reasons, as contrasted with attempt to defraud creditors by withdrawing assets available to meet their claims.

Except for failure to give public notice, the instant transaction would almost seem to fall into the exception provided in 12A P.S. § 6–103(6).

■ Even if the transfer here were "ineffective" under 12A P.S. § 6–104(1), such invalidity benefits only a "creditor" of the transferor. "Creditor", as defined by 12A P.S. § 1–201(12) means "an unsecured creditor". See also 12A P.S. § 6–109(1). We are of opinion that the term thus refers to persons holding liquidated claims rather than to assertions of potential liability for breach of contract. We therefore hold that for this reason the bulk sales legislation does not avail the plaintiff here.

■■ Plaintiff is likewise barred by the statute of limitations of 12A P.S. § 6–111. We are of opinion that this provision applies, as its language shows, to any action "under this Article", i. e. 12A P.S. §§ 6–101 through 6–111. Any action in which a plaintiff invokes the bulk sales provisions are included, whether or not the parties involved in the transfer undertook to proceed in pursuance of those provisions originally in order to obtain the protection afforded by compliance.

■ The only exception is where "the transfer has been concealed". We hold that this refers to affirmative concealment, not to mere non-disclosure or failure to give "public notice" (cf. 12A P.S. § 6–103(6)). No affirmative concealment exists in the case at bar. There was merely no disclosure.

■ The steps taken for dissolution of Keystone were simply a tax-motivated transaction, not an effort to defraud creditors or adversaries in litigation. All the usual formalities of such a tax liquidation were pursued. Indeed, a fund comprising $90,000.00 was placed in escrow for payment of debts, and lists of creditors and pending litigation prepared.

We therefore conclude that plaintiff can not recover under the Uniform Commercial Code.

However, this does not mean that judgment for defendant Chamberlain must now be given.

 There are questions of fact regarding the merits of plaintiff's claim on the contract, and with respect to the alleged defective merchandise and delays in delivery. Likewise there are questions of fact regarding the intent of the parties to the liquidation agreements. It may well be that plaintiff is entitled to recover from Chamberlain by reason of the assumption provisions of those agreements. Moreover, in view of the current trend towards holding successor corporations carrying on the same business liable, even in absence of privity of contract, on the basis that *qui sentit commodum sentire debet et onus*, plaintiff should be given the opportunity to advance any other grounds of liability apart from the Uniform Commercial Code. John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 551, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964). The liquidation contract here accords Chamberlain the right to "Keystone's good will as a going concern" and the right to use Keystone's name (Keystone being required to change its name).

Accordingly, the motion will be denied except with respect to Count II of the complaint, which invokes the Uniform Commercial Code.

### ORDER

And now, this 4th day of October, 1968, upon consideration of defendants' motion for summary judgment, and of briefs in support thereof and in opposition thereto, and the Court being of opinion that plaintiff is not entitled to recover under the Uniform Commercial Code, but that other issues of fact remain for disposition,

It is ordered that judgment be and it hereby is rendered against plaintiff and for defendants upon Count II of the amended complaint;

And it is further ordered that defendant Chamberlain's motion for summary judgment be and it hereby is in other respects denied, and that further proceedings in the cause go forward in due course.