**Bobby J. McKISSICK, Defendant-Appellant,**

v.

**FOREMOST–McKESSON, INC., d/b/a McKesson and Robbins Drug Co., Plaintiff-Appellee.**

No. 29753.

United States Court of Appeals, Fifth Circuit.

April 21, 1971.

Kenneth R. Cain, Ozark, Ala., for defendant-appellant.

Hobbs, Copeland, Franco, Riggs & Screws, Howard C. Oliver, Montgomery, Ala., for plaintiff-appellee.

Before CLARK, Associate Justice *, and GEWIN and RONEY, Circuit Judges.

GEWIN, Circuit Judge:

Appellant Bobby J. McKissick sought to enjoin the sale of two businesses which were ordered to be sold by the court pursuant to a levy of execution on a judgment obtained by appellee against Clarence R. Hull. Appellant claims that he, not Hull, owned the businesses. After a hearing on the question of ownership, the district court rejected appellant's claim and ordered the United States Marshal to proceed with the sale.[1] We affirm.

In the original cause of action, Foremost-McKesson, Inc., d/b/a McKesson and Robbins Drug Company (hereinafter Foremost-McKesson) filed suit against Clarence R. Hull, individually and d/b/a Millbrook Drug. The complaint alleged that Hull owed Foremost-McKesson $11,-493.10 on open account. In connection with this suit, Foremost-McKesson took the deposition of Hull on February 26, 1969. Hull deposed that he was the sole owner of both Millbrook Drugs and Mill-brook Home & Auto Supply Company, two businesses operating in the same building in Millbrook, Alabama, with an interconnecting, open passageway. Hull admitted in the deposition that he owed Foremost-McKesson a substantial sum, but he did not know the exact amount.

After the action was submitted to the court on motion, the district court granted Foremost-McKesson a summary judgment against Hull, individually and d/b/a Millbrook Drugs in the amount of $11,493.10. Thereafter, when several attempts to collect the judgment failed, Foremost-McKesson levied on Hull's property, namely, Millbrook Drug Company and Millbrook Home & Auto Supply. In conjunction with this action, the United States Marshal, after closing both businesses and giving appropriate notice, sold the entire inventory of Millbrook Drugstore. The proceeds of the sale, however, were insufficient to satisfy the judgment; as a result a sale of the hardware store was proposed.

Before the proposed sale of the hardware store took place, appellant Bobby J. McKissick, an inmate at Maxwell Air Force Base Federal Prison, wrote the United States Marshal for the Middle District of Alabama claiming that he, not Clarence Hull, owned Millbrook Drug Company and Millbrook Hardware & Building Material (formerly Millbrook Home & Auto Supply). In the letter McKissick requested that the Marshal stop the proposed sale of his businesses. In response to this letter, Foremost-McKesson moved the court to postpone the pending sale until a hearing could be held to clarify the ownership of the businesses. Judge Johnson granted Foremost-McKesson's motion, and a hearing was set for February 11, 1970.

At the hearing the following facts were developed. McKissick claimed own-

* Associate Justice, United States Supreme Court, Retired.

1. The court held that a stay of the sale would be granted upon appropriate motion of either McKissick or Hull accompanied by a bond in the amount of $15,000.00. No bond was posted and the sale has taken place.

2. Ownership of the drugstore is undisputed prior to this date. All parties concede that Hull was the sole owner of the drugstore from 1964 until March 1, 1969.

ership of Millbrook Drug by virtue of a bill of sale executed at Maxwell Air Force Base Prison on March 1, 1969.[2] He claimed that his brother-in-law, Clarence Hull, sold the business to him for past debts amounting to $17,000. This alleged sale took place three days after Foremost-McKesson had taken Hull's deposition in which he stated that he was the sole owner of the business. The bill of sale consisted of a simple piece of paper signed by Hull, but not notarized, witnessed or recorded.[3] McKissick testified that he and Hull operated Millbrook Drug as a partnership from 1957 until 1964 when the partnership was dissolved. Hull claimed that he was the sole owner of the drugstore from January 1, 1964 until March 1, 1969, when he allegedly sold it to McKissick.[4]

McKissick also claimed to own the hardware side of the business, Millbrook Home and Auto Supply. He testified that he obtained the store in late 1968 although no consideration was passed, no bill of sale was signed, and no assets were disposed of separately. McKissick's explanation was that in 1968 Millbrook Home and Auto Supply gradually dwindled to almost nothing, at which time he took it over and started Millbrook Hardware and Supply. Both Hull and McKissick admitted, however, that neither of them made any disclosure of the transaction; indeed they made no attempt to give notice of the alleged sale

to creditors. In short their arrangement, whatever it may have been, was entirely a private affair and Hull continued to "run" the store as it had been operated in the past.[5]

At the conclusion of the hearing the court made the following findings and conclusions based on the evidence introduced at the hearing, the depositions entered, and the previous history of the case:

I find that both the drug company and the hardware company were owned by Hull at all times material to this case, and that they were both operated as a single business. As an alternative finding, I find that both the drug store and the hardware store were owned by McKissick and Hull as a partnership at all times material to this case, that they were operated as a single business.

Regardless of which finding—I make them in the alternative because I think it is appropriate under the circumstances in this case to do that— *both of them were subject to the debt and judgment that have been rendered in this case.* (Emphasis added)

The Court finds that the March 1, '69, bill of sale was, insofar as these plaintiffs are concerned, fraudulent in every respect. It did not operate to divest Hull of any interests in the business or the stock or the fixtures. It didn't operate to remove any of the

3.                    Bill of Sale
                                    March 1, 1969
I Clarence R. Hull hereby, sell, convey for $100.00 (one hundred) and other values, Millbrook Drug Company: Highway 143, Millbrook, Ala. and all contents thereof, such as fixtures, merchandise, accounts & etc. to Bobby J. McKissick.
I will not be liable for any debts accumulated by Millbrook Drug Co. after this date.
                            /s/ Clarence R. Hull
Although the bill of sale recites a consideration of $100.00 and other values, both parties to the transaction admit that no consideration was paid at the time of execution. In fact, Clarence Hull concisely summarized the testimony on this point when on direct examination he responded to the following question:

Q. What consideration were you paid?
A. Well, as has been stated, I wasn't paid anything other than just what he had put in the business prior to this time.

4. There was evidence tending to prove the existence of a partnership between McKissick and Hull. However, under the conclusion we have reached that fact would not require a different result in this case because such a partnership would be void as to the appellee-creditor for the reasons hereinafter given.

5. McKissick was incarcerated in the Federal Penitentiary on November 25, 1968. Thus, if he acquired the hardware store in late 1968 as he testified, he could have operated it for only a short period if at all.

stock or the fixtures from the reach of the execution that has been issued in this case.

The plaintiff's counsel will prepare a judgment pursuant to these findings and order that the sale of the stock and the fixtures and any other assets owned by the hardware or the drug company be sold by the Marshal in due and regular course to satisfy this judgment, unless it is sooner paid. The bond that the Court required to protect the Marshal will stay in force and effect. A stay of this sale will be entered upon the appropriate motion either from Mr. McKissick or Mr. Hull or both of them, provided they post a bond in the amount of fifteen thousand dollars, to be approved by the Court; otherwise, the sale will proceed.

That will be the judgment of the Court.

Appellant contends that the court committed reversible error by making contradictory alternative findings of fact. On the one hand, the court found that "both the drug company and the hardware company were owned by Hull"; and on the other hand, as an alternative finding, he found that both businesses were owned by McKissick and Hull as a partnership. Appellant further argues that the alternative finding of the court that the businesses were owned by a partnership undermines Foremost-McKesson's claim that the assets of both the drugstore and the hardware store are subject to the levy of execution on its judgment against Hull individually. McKissick insists that his interests in the partnership cannot be levied upon because he was not made a party to Foremost-McKesson's judgment against Hull. In view of the court's judgment, following the hearing on the motion, however, we find no irreconcilable conflict in these alternative findings.[6]

The court found that under both holdings, whether the businesses were solely owned by Hull, or jointly owned by Hull and McKissick, that the assets of both businesses were subject to the debt and judgment which had been rendered in favor of Foremost-McKesson. This holding is tantamount to saying that any transactions between McKissick and Hull without notice to creditors are void and of no effect.[7] Such a conclusion would have been required by the provisions of the Alabama bulk sales law prior to the adoption of the Uniform Commercial

6. Appellant in part rests his claim of fundamental error on the contention that the judgment here involved is on its face alternative in nature and therefore void. Although it is true that alternative judgments are not favored, a careful reading of Judge Johnson's opinion shows that while he made alternative findings he entered a single judgment. The distinction between judgments and findings has been stated as follows:

Neither the verdict of a jury nor findings of the court constitute a judgment. Nor do the conclusions of law stated by the judge during or after the trial of the case, nor his opinion upon matters submitted, whether oral or in writing, necessarily form a part of the judgment proper. It has been correctly said that the decision of a court constitutes its judgment while the opinion represents merely the reasons for that judgment.

G. Amsinck & Co. v. Springfield Grocer Co., 7 F.2d 855, 858 (8th Cir. 1925). The judgment of the court, based on its findings and conclusions is as follows:

Pursuant to and in accordance with the Findings and Conclusions of Fact in this case relating to the ownership of Millbrook Drug Co. and related businesses, it is the order of this Court that the United States Marshal, in due and regular course, proceed with the sale of the stock and fixtures and other assets of the hardware and drug company in order to satisfy this judgment, unless it is sooner paid. Further, it is ordered that the bond this Court has required to protect the Marshal, stay in force and effect. It is also ordered that a stay of this sale will be entered upon the appropriate motion of either Mr. McKissick or Mr. Hull, or both of them, provided they post a bond in the amount of $15,000, to be approved by this Court; otherwise, the sale will proceed.

7. By the admission of both McKissick and Hull, no notice to any creditor was given.

Code.[8] It is likewise required by section 6–105 of the Alabama Commercial Code which superseded the Alabama Bulk Sales law.[9] Section 6–105 provides that, except for auction sales, any bulk transfer is ineffective against a creditor of the transferor unless at least ten days before he takes possession of the goods or pays for them, whichever occurs first, the transferee gives notice in the manner and to the persons provided in section 6–107. This notice requirement forms the very heart of the bulk sales law. As one author has stated:

Notice to known creditors of the seller is the dignus vindice nodus of the regulations of Bulk Sales. It is the shield that protects the sale from the attack of creditors. None of the requirements for compliance are as important as the notice requirement, for only through such notice can the creditor, especially one distant from the locale of the place of business of the seller, be made cognizant of the impending sale and given an opportunity to protect his interest.[10]

The sanction of Section 6–105 is to make the sale or transfer ineffective against creditors.[11] In Alabama, Section 6–105 became effective January 1, 1967. Since it is alleged by appellant that the transaction as to the hardware store took place in late 1968, while the alleged sale of the drugstore purportedly took place March 1, 1969, both transactions were void as to creditors such as Foremost-McKesson.[12] Stated otherwise, assuming the bill of sale and other transactions to be valid between the parties themselves, resulting in the creation of a partnership as between them, such a transfer would nevertheless be fraudulent and void as to Foremost-McKesson, the creditor here involved.[13]

The judgment of the district court is affirmed.

8. The Alabama Bulk Sales Act, Ala.Code, Title 20, § 10 (Recomp.1958), provided:
 A sale of any portion of a stock of merchandise otherwise than in the ordinary course of trade or in the regular and usual prosecution of the seller's business and a sale of an entire stock of merchandise in bulk or substantially in bulk *shall be presumed to be fraudulent and void as against the creditors of the seller,* and the purchaser thereof shall be considered to hold the merchandise in trust as trustee for the benefit of the creditors of the seller for a period of ninety days from the date of sale * * * (Emphasis added)
 See: Roberts v. Norrell, 212 F.Supp. 897, 901 (N.D.Ala.1963); Roddam v. Martin, 285 Ala. 619. 235 So.2d 654, 655 (1970).

9. Alabama Uniform Commercial Code, Article 6, Bulk Transfers, Ala.Code, Title 7A, § 6–105 (Recomp.1958).

10. G. McNally, Bulk Sales: A Transition, 27 Ala.Law. 388, 394 (1966).

11. Ala.Code, Title 7A, § 6–104, Comment 3.

12. Of course, this is not to hold that such transactions are invalid as between McKissick and Hull; however, the determination of that issue is not before this court.

13. On this appeal the appellant has not raised any question relating to the statute of limitations. However, it should be noted that the judgment of Foremost-McKesson against Hull was obtained on March 20, 1969. If there was a partnership, it came into existence in late 1968. The bill of sale is dated March 1, 1969. Alabama Code, Title 7A, § 6–111 (Recomp.1958) provides as follows:
 No action under this article shall be brought nor levy made more than six months after the date on which the transferee took possession of the goods unless the transfer has been concealed. If the transfer has been concealed. actions may be brought or levies made within six months after its discovery.
 See, *e. g.,* Pan American Petroleum Corp. v. Orr, 319 F.2d 612 (5th Cir. 1963).