461 A.2d 312

**COLUMBIAN ROPE COMPANY, Appellant,**

v.

**RINEK CORDAGE COMPANY, Rinek Rope Company & E. Jerome Brose, Esq.**

Superior Court of Pennsylvania.

Argued May 10, 1982.

Filed June 3, 1983.

[redacted] 

[redacted]

[redacted]

[redacted]

[redacted]

---

David C. Keiter, Harrisburg, for appellant.

Thomas R. Elliott, Easton, for appellees.

Before CAVANAUGH, CIRILLO and HOFFMAN, JJ.

HOFFMAN, Judge:

Appellant, a creditor, contends that the lower court erred in denying its claim against Jerome Brose, the former president of a debtor corporation, and against Rinek Rope Co. [Rope], which received the debtor's remaining assets in a bulk transfer. We find the claim against Brose was properly denied. However, because the bulk transfer to Rope was "concealed" within the meaning of 13 Pa.C.S.A. § 6111, the six-month statute of limitations did not begin running until appellant discovered the bulk transfer. Ac-

cordingly, we reverse the lower court's order dismissing appellant's claim against Rope, and remand for findings of fact as to whether appellant commenced its action within six months of discovering the bulk transfer.

During 1971, appellant sold yarn to its original debtor, appellee Rinek Cordage Co. [Cordage], a rope manufacturer. Cordage paid $22,683.48 less than the agreed price, and in December, 1972, executed a promissory note for that amount. Shortly thereafter, Cordage, in financial difficulty, offered its creditors fifty cents on the dollar, but appellant refused the offer. On April 1, 1974, Cordage sold its entire inventory to appellee Rope in exchange for Rope's president forgiving a $17,588.55 debt Cordage owed him. It is undisputed on this appeal that this sale constituted a bulk transfer. Rope, however, neither notified appellant or Cordage's other creditor, nor made any provision to apply the proceeds of the sale for the creditors' benefit. On November 12, 1976, appellant filed a complaint in assumpsit against Cordage, Rope, and Brose, seeking to recover the outstanding debt from any or each of them. Rope, in amended new matter, alleged that appellant's claim was barred by the statute of limitations of the Uniform Commercial Code-Article 6, 13 Pa.C.S.A. § 6111, because the action was commenced more than six months after the bulk transfer. Appellant asserted, however, that its action was timely because commenced within six months of its discovering the "concealed" bulk transfer. After trial, the lower court held that the bulk transfer had not been concealed, and thus that appellant's action against Rope was barred. The lower court en banc denied appellant's post-trial motions, prompting this appeal.

■ Appellant contends that Rope's complete failure to give notice of the bulk transfer constituted a concealment of the bulk transfer, and thus the statute of limitations did not begin to run against it until its discovery of the transfer. We agree. The Uniform Commercial Code, Article 6,

concerning bulk transfers, as enacted in Pennsylvania, 13 Pa.C.S.A. §§ 6101–6111, is designed to remedy the "major bulk sales risk" of the merchant, owing debts, who sells away virtually all his stock in trade and disappears leaving his creditors unpaid. Uniform Commercial Code, § 6–101, Comments 2, 4. *See generally* Hawkland, Sales & Bulk Sales, (3d ed. 1976); J. White & R. Summers, Uniform Commercial Code, § 19–1 at 757 (2d ed. 1980) (noting that in the absence of a bulk sales law creditors cannot ordinarily follow goods into a transferee's hands and have very limited remedies in this circumstance). The statute's basic mechanism is to require the prospective transferee to give advance notice to the transferor's creditors of the impending bulk sale. 13 Pa.C.S.A. §§ 6104, 6105, 6107. The transferee must also take steps to insure that the proceeds are applied to the benefit of the transferor's creditors. *Id.* § 6101. The prior notice affords the creditors an opportunity to participate in structuring the transfer or commence legal action against their debtor, the transferor, before the assets are sold away. To promote compliance, the statute establishes three alternative time limitations for creditor actions against the transferee. First, if the transferee gives the statutory notice and otherwise complies with the statute, the bulk transfer will be "effective" against any creditor of the transferor. *Id.* § 6105. The complying transferee will be shielded immediately upon the transfer from the creditors' actions. Creditors will therefore be required to act expeditiously against their debtor, the transferor, within the ten or more days between the statutory notice and the transfer or they will effectively lose their opportunity to collect their debt.[1] Second, if the transferee does not give the required notice, the transfer will be "ineffective" against the transferor's creditors, *id.* § 6105, who may then commence actions for the transferor's debts against the transferee within the six months following the

---

**1.** Creditors who have obtained judgments against the transferor may, however, "levy" against goods in the transferee's hands for six months even after a complying transfer. 13 Pa.C.S.A. § 6111.

transfer. *Id.* § 6111.[2] Third, if the transferee's failure to give notice is not simply non-compliance with the statute but amounts to "concealment" of the bulk transfer, the transferee is subject to actions by the transferor's creditors commenced within six months of when the creditor discovers the concealed bulk transfer. *Id.* § 6111. The question we face here is whether a completely undisclosed bulk transfer should be treated as "concealed" for purposes of the U.C.C.'s statute of limitations.

■ Case law is divided upon what constitutes concealment of a bulk transfer. No prior Pennsylvania appellate decision has interpreted this statutory term.[3] Some courts have required "active" or "affirmative" concealment. *Aluminum Shapes, Inc. v. K–A Liquidating Co.*, 290 F.Supp. 356, 358 (W.D.Pa.1968). *Accord Aerolineas Argentinas v. Hansen & Yorke Co.*, 12 U.C.C.Rep.Serv. 329 (N.Y.Civ.Ct. 1973) (dicta). Others have held that *"complete* failure to comply with the notice provisions of [U.C.C.] Article 6 ... was tantamount to a concealment of a transfer of assets within the meaning of Sections 6–111." *E.J. Trum, Inc. v. Blanchard Parfums, Inc.*, 33 App.Div.2d 689, 306 N.Y.2d 316, 6 U.C.C.Rep.Serv. 1261 (1969) (emphasis added) (reversing summary judgment and remanding for findings on whether creditor commenced action within six months of discovering the bulk transfer). *Accord, McKissick v. Foremost McKesson, Inc.*, 441 F.2d 811, 8 U.C.C.Rep.Serv. 301

2. We need not determine here what degree of compliance with the notice and other statutory requirements is sufficiently substantial to afford transferees protection immediately upon the transfer. Nor need we determine what defects or omissions in an otherwise complete attempt to comply should deprive it of such protection. *See generally* J. White & R. Summers, *supra,* Ch. 19.

3. *See* Annot., Bulk Transfers: Construction & Effect of U.C.C. Article 6, 47 A.L.R.3d 1114 § 11 (1973) (collecting cases). *See also Aluminum Shapes, Inc. v. K–A Liquidating Co.,* 290 F.Supp. 356 (W.D.Pa.1968) (interpreting Pennsylvania bulk sales law); *Thompson v. Farrier Industries,* 16 Pa.D. & C.3d 463 (1980) (bankruptcy law allots trustee in bankruptcy two years from filing of bankruptcy petition to commence actions against bankrupt transferor's creditors, thus trustee not barred by U.C.C.'s statute of limitations when bankruptcy petition was filed within six months of bulk transfer).

(5th Cir.1971) (dicta). We find that the complete failure to give notice of the impending bulk transfer is not merely noncompliance, but "concealment."

Treating complete failure to give notice merely as noncompliance and not concealment would undermine the legislature's scheme to promote advance notice of bulk transfers. Although the transferee who gives no notice will not obtain protection from the transferor's creditors immediately upon the transfer—as does the transferee who fully complies—he would, under the restrictive interpretation of concealment, run only a small risk of creditor action within six months after the completely undisclosed transfer. Sending the statutory notice stirs up the transferor's creditors, possibly delaying the transfer and increasing the risk of creditor action adverse to the transferee's interests. Less formal notice would likely have similar consequences, and also gives creditors essential information to promptly begin action. However, when no notice at all is given, creditors have little means to discover the completely undisclosed transfer, identify the transferee, and commence action all within six months of the transfer. Prudent transferees would thus, despite the legislative intent, regularly choose the alternative of complete non-disclosure unless such complete non-disclosure were considered concealment. See J. White & R. Summers, supra (noting and criticizing those attorneys who advise transferees not to comply with the notice provisions of Article 6).

Interpreting "concealment" to include complete nondisclosure is, on the other hand, consistent with the legislature's scheme and eminently fair to both transferees and creditors. The transferee's protection from creditors is more reliably based on the notice given. The time limits on creditors' actions becomes more reasonably related to their opportunity to act. The discovery rule statute of limitations that applies upon concealment, 13 Pa.C.S.A. § 6111, provides no windfall to laggard creditors, is commercially realistic, and thus need not be reserved solely as a sanction for intentionally deceptive conduct. Creditors must still act

within six months of discovering the transfer so that transferees are spared prolonged liability for the transferor's stale debts. In addition, even informal notice may, in appropriate circumstances, place the creditor on notice and start the limitations period running. *Aerolineas Aargentinas v. Hansen & Yorke, Inc., supra* (creditor's letter mentioning "when one company buys out another" showed creditor had discovered the bulk transfer by time of letter).

Finally, the legislative scheme does not suggest that the concealment must be intentional or affirmative. Although affirmative acts of concealment, such as evasive answers to creditors' inquiries or orders that employees remain silent about the transfer or the new ownership, might assist a creditor's showing concealment, they are not central to the legislative scheme. Similarly, unlike in common-law actions for fraud, the transferee's intent or scienter is not relevant to the harm the bulk transfer statute seeks to prevent. Inadvertent as well as conscious failures to make any disclosure of a bulk transfer both occasion the major bulk sales risk of a transferor merchant disposing of his stock in trade and disappearing, leaving his creditors unpaid. Moreover, to require proof of intent or affirmative deception as a prerequisite to finding "concealment" under 13 Pa.C.S.A. § 6111 would be to presume that a transferee might ordinarily purchase all of the transferor's stock in trade, thus rendering the transferor a hollow shell, without considering or making provision for the transferor's creditors. Such an unrealistic presumption would defy the standards of "reasonable" commercial practice, *id.* § 1102(b)(2), the Code's good faith provisions, *id.* § 1203, and the legislature's intent that we liberally construe the Code to effect its purposes, *id.* § 1102. Consequently, a complete failure to notify the transferor's creditors should be considered "concealment" of the bulk transfer for purposes of calculating the statute of limitations under 13 Pa.C.S.A. § 6111.

■ Applying these principles, the record reveals that the bulk transfer here was wholly undisclosed, and thus concealed. No notice, formal or informal, was sent to Cord-

age's two outstanding creditors, apparently because Rope's and Cordage's officers did not think it necessary. (N.T. at 11). The circumstances in no way revealed to creditors that the transfer had occurred. Both transferor and transferee operated out of the same business address, with Cordage owning the premises and Rope leasing space. Both used the "Rinek" name. Even after the transfer, Cordage's president was not scrupulous in differentiating between the two entities. Letter from Jerome Brose to Michael Hole, April 25, 1974 ("I have completed refinancing of the *Rinek* real estate" (emphasis added)). Moreover, although Rope had existed separately since 1971, and used stationery showing its own name—Rinek Cordage forms with "Cordage" blacked-out and "Rope" rubber-stamped above—such a precaution did not reveal the fact of the bulk transfer on April 1, 1974. Accordingly, even though the record contains no proof of deceptive intent, the bulk transfer was effectively "concealed" from creditors by the complete non-disclosure. 13 Pa.C.S.A. § 6111. We thus reverse the lower court's dismissal of the action against Rope, and remand for findings of fact to determine whether appellant commenced action within six months of its discovering the bulk transfer.

Appellant contends also that the lower court erred in denying its claim against Jerome Brose, president of Cordage. Appellant argues that Brose entered into a contract to assume personal liability for Cordage's debt by the following letter to appellant dated April 25, 1974:

I have completed the refinancing of the Rinek real estate. It took the form of a conveyance to me, personally, of the real estate and my bond and mortgage to the bank.

Enclosed please find a check for $6984.80 representing interest due to March 1, 1974 of $1894.80 and $5,000 in principal reduction.

Kindly send future invoices to me at this address. We have about half of the space rented. As we get more

tenants I should be able to effect more principal amortization.

Thank you for your generous forbearance to date and kindest regards.

/s/ Jerome Brose

Brose sent a check from an attorney's account in his name along with this letter, written on Brose's law firm stationery. We agree with the lower court that this letter did not constitute an offer by Brose to assume personal liability for Cordage's debt. To support a contract an offer must make a promise that is sufficiently definite on essential elements, when read in light of circumstances, to enable a determination of whether the contract has been performed. *Fahringer v. Strine's Estate*, 420 Pa. 48, 216 A.2d 82 (1966); *Butler v. Kemmerer*, 218 Pa. 242, 67 A. 332 (1907); *Potter v. Leitenberger Machine Co.*, 166 Pa.Superior Ct. 31, 70 A.2d 390 (1950). This letter is unclear on the essential issue of the intended parties to the contract. Writing on law firm stationery and paying from an attorney's account, Mr. Brose did not reveal whether he was acting on his own behalf, or as an agent of "Rinek," in paying the debt and offering to receive future invoices. Similarly, the testimony on the record does not reveal that Brose personally assumed the debt. Accordingly, we affirm the judgment in favor of Brose.

The Order denying the claim against Jerome Brose is affirmed.

As to that portion of the lower court's Order dismissing action against Rinek Rope Co., we reverse and remand for further proceedings consistent with this opinion.

So ordered.

JURISDICTION IS RELINQUISHED.

CIRILLO, J., files a dissenting opinion.

CIRILLO, Judge, dissenting:

I find that I must respectfully dissent from that part of the majority's opinion which holds that failure to give notice

of an impending bulk transfer is not merely non-compliance within the meaning of 13 Pa.C.S.A. § 6111, but constitutes "concealment."

Under 12A P.S. § 6–105,[1] a transferee is required to give notice to the creditors of the transferor. It states:

### § 6–105. Notice to Creditors

In addition to the requirements of the preceding Section, any bulk transfer subject to this Article except one made by auction sale (Section 6–108) is ineffective against any creditor of the transferor unless at least ten days before he takes possession of the goods or pays for them, whichever happens first, the transferee gives notice of the transfer in the manner and to the persons hereafter provided (Section 6–107).

Therefore, bulk transfers covered by Article 6 are not subject to attack if the compliance procedures of the statute are followed. If the complying transfer is not a fraudulent conveyance and does not amount to a preference, the goods are beyond the reach of simple creditors unless they can reduce their claims to judgment and levy on the goods during the ten day period between notice and transfer.[2] Therefore, a claim of ineffectiveness rises when the transferee has *failed to provide notice* to the creditors of the transferor.[3] When this occurs, the creditor has a cause of action not only against the transferor, but also against the transferee.

The period in which the creditor must bring this action is not unlimited. The failure to comply with the notice provi-

1. This has subsequently been re-codified as 13 Pa.C.S.A. §§ 6101–6111. However, the provisions are substantially the same. Since this action was initiated prior to the change, we will refer to the old statute.

2. Hawkland, *Sales and Bulk Sales,* 3rd Ed. at 209–215 (1976). If there is full compliance with the Article, then creditors have six months to examine the schedule of property and the list of creditors. If they find that the transfer was fraudulent or preferential, they may be able to invalidate the transfer under the laws of fraudulent conveyance or Article 9.

3. The formal requirements of this notice are set forth in 12A P.S. § 6–107.

sions of the Article activates Section 6–111, which requires that an action be brought within six months of the date of the transfer or the claim will be barred. However, if there has been a concealment of the transfer, the general six month statute of limitations is inapplicable, and the creditor can bring his claim at any time within six months after he learns of the transfer.

The majority has held that we must adopt the view that "concealment," as it is used in Section 6–111, can refer simply to a failure to give the requisite notice of the transfer to the creditors as required by Section 6–105. However, if we subscribe to this view, it will totally nullify the general six month statute of limitations under Section 6–111.[4] Specifically, the effect of such a holding would be to exempt every action under Section 6–111 from the applicability of the general six month statute of limitations. Clearly, such a result was not the intention of the drafters of the Uniform Commercial Code. On the contrary, I would adopt the view of the Federal District Court in the case of *Aluminum Shapes, Inc. v. K–A Liquidating Co.*, 290 F.Supp. 356 (W.D.Pa.1968), which held, as an interpretation of Pennsylvania law, that concealment within the meaning of 6–111 "refers to affirmative concealment and not to mere nondisclosure or failure to give 'public notice'." *Id.* at 359. I believe that it is a more plausible conclusion.

Therefore, I would hold that "concealment" under 12A P.S. § 6–111 requires some sort of affirmative act on the part of the transferee to shield the transfer from the creditor. My review of the record discloses that there is no evidence of such behavior on the part of Rinek Rope Company. Consequently, I find that appellant's claim should be barred by the six month statute of limitations.

Therefore, I dissent.

4. *See, Hawkland, Uniform Commercial Code Series* § 6–111:02 (1982).