**SVM INVESTMENTS, Appellants,**

**v.**

**MEXICAN EXPORTERS, INC., d/b/a ATM Gamesa, Appellees.**

**No. 04–83–00279–CV.**

Court of Appeals of Texas, San Antonio.

Jan. 30, 1985.

Rehearing Denied Feb. 26, 1985.

Jerry R. Houser, Benjamin F. Young-blood, III, San Antonio, for appellants.

Stephen Parten, San Antonio, Alonzo Diaz, Laredo, for appellees.

Before ESQUIVEL, CANTU and DIAL, JJ.

## OPINION

CANTU, Justice.

Suit was brought by Mexican Exporters, Inc. d/b/a ATM Gamesa (Gamesa) against John A. Guerrero individually and d/b/a West Coast Import Sales, West Coast Imports and Anthony's International on a debt arising out of credit sales of wholesale foodstuffs. SVM, Investments, (SVM), a partnership consisting of Mark D. Girgus, Samuel Girgus and Victor K. Dullye, was added as a defendant because of alleged violation of the Bulk Transfers Act.[1]

Trial was to the court which entered judgment against Guerrero for the amount of $53,476.96 and against SVM for a joint and several portion of Guerrero's debt in the amount of $30,467.00.

---

1. TEX.BUS. & COM.CODE ANN. §§ 6.101–.111.

SVM contended at trial that Gamesa's suit was barred by the six month statute of limitations imposed by the Bulk Transfers Act. TEX.BUS. & COM.CODE ANN. § 6.111 (Tex.UCC) (Vernon 1968). Gamesa responded that even though suit was brought in excess of six months after the bulk transfer, its cause of action was not barred because SVM and Guerrero had concealed the transfer by their failure to give Gamesa the statutory notice required, thereby tolling the statute.

SVM admitted that Gamesa was not given written notice but took the position that it and Guerrero took no action to affirmatively conceal the transfer, but in fact gave oral notice of the transfer to one of Gamesa's officers.

Guerrero does not appeal from the judgment entered, however, SVM raises five points of error in which it challenges the trial court's findings of fact and conclusions of law.

The pertinent findings of fact and conclusions of law being challenged recite:

### Findings of Fact

\* \* \* \* \* \*

5. That the said transfer was concealed by the failure of any of the Defendants to give Plaintiff notice thereof.

\* \* \* \* \* \*

7. That the Plaintiff first discovered the bulk transfer to Anthony's International, Ltd. on March 12, 1981.

\* \* \* \* \* \*

### Conclusions of Law

\* \* \* \* \* \*

4. Defendants did improperly conceal said transfer by its (sic) failure to give proper notices thereof.

5. That due to the concealment of the said transfer by the Defendants, the limitations period set out in Section 6.111 of the Texas Business and Commerce Act did not bar Plaintiff's cause of action, it being brought within 6 months of Plaintiff's discovery of the transfer.

\* \* \* \* \* \*

SVM contends generally that the evidence is factually and legally insufficient to support a trial court finding that there was concealment by the failure of defendants to give notice of the bulk transfer and that the evidence is factually insufficient to support a finding that Gamesa did not discover the bulk transfer until March 12, 1981.

SVM further contends that the trial court erred in concluding that mere failure to give the notice required under TEX. BUS. & COM.CODE ANN. § 6.105 (Tex. UCC) (Vernon 1968) constitutes concealment as a matter of law.

Finally, SVM claims the trial court erred in not barring Gamesa's suit since it was brought in excess of six months after the date of the bulk transfer.

Because we sustain appellant's contention that the trial court incorrectly construed the meaning of concealment under the statute we do not address the other points raised.

The question before us then is whether mere failure to give the required statutory notice constitutes concealment as a matter of law such as to toll limitations until the discovery of the transfer and for a period of six months thereafter.

Gamesa is a Texas Corporation engaged in the importation of various Mexican foodstuffs including cookies, crackers, sauces and Jalapenos. The foodstuffs are manufactured in Mexico, imported to Texas, and distributed on a wholesale basis by several different companies and individuals. One of the distributors of Gamesa's items was Guerrero, who at various times transacted business as an individual, through partnerships and through a corporation.

Initially Guerrero operated through a partnership with one Frank Sepulveda as West Coast Imports. The partnership was dissolved and Guerrero thereafter did business individually as West Coast Import Sales. At some point Guerrero formed a Texas Corporation known as Anthony's International, Inc. This corporation did little business but it did manage to borrow money and execute promissory notes to the

Texas Bank of San Antonio. Guerrero operated Anthony's International, Inc. simultaneously with West Coast Import Sales but eventually the corporation's charter was forfeited for failure to pay franchise taxes.

Guerrero, acting through his various entities, purchased goods from Gamesa and sold them to several large grocery chains including H.E. Butt, Weingartens, Kroger and Consumer's Commissary. He was highly regarded as a salesman, especially of Gamesa's products and his sales territory included much of South Texas and extended into Houston. Guerrero maintained warehouses in San Antonio and Corpus Christi.

When Guerrero's partnership with Sepulveda was dissolved, Guerrero continued to operate West Coast Imports in his individual capacity. He, however, lacked capital, facilities and management. Gamesa agreed to sell Guerrero goods on credit upon Guerrero's execution of assignments in favor of Gamesa through the Texas Bank. The procedure set up required Gamesa to advance products to Guerrero who in turn would sell them to the various grocery chains. Guerrero routinely marked his goods thirty percent above cost.

The grocery chains received their invoices from Guerrero but made their payments directly through the Texas Bank which in accordance with the assignments, placed the monies received in an account for Gamesa. Gamesa then drew upon the account to pay for the goods sold on credit to Guerrero. The amounts received by Gamesa included Guerrero's thirty percent markup. Pursuant to the agreement, Gamesa retained ten percent of the thirty percent markup as a "kitty" so that Guerrero could eventually possess his own inventory. The remaining twenty percent was to be paid by Gamesa to Guerrero as soon as Gamesa received copies of the invoices from the grocery chains.

Although Guerrero was an excellent salesman the arrangement did not function properly and Gamesa, realizing a mounting debt on its extended credit to Guerrero, ceased selling goods to Guerrero on credit in December of 1980. Without credit from Gamesa, Guerrero's sales practically ceased.

In early January of 1981 SVM was approached about Guerrero's plight. SVM possessed financial and business experience and could obtain capital to invest. Following a meeting between SVM and Guerrero a new partnership was formed known as Anthony's International, Ltd. Under the terms of the partnership, SVM contributed capital and established a line of credit at the Texas Bank and Guerrero contributed his accounts receivable and the balance of his inventory on hand. SVM provided the management services and Guerrero his sales abilities.

SVM received a management fee and expense reimbursement while Guerrero received a weekly salary. Profits were to be divided such that Guerrero would receive sixty percent and SVM forty percent.

The partnership began operations on January 31, 1981 when Guerrero conveyed his inventory to Anthony's International, Ltd. The conveyance, it is undisputed, constituted a bulk transfer as it was a transfer, not in the ordinary course of Guerrero's business, which consisted of a major part of the materials, supplies, merchandise and inventory of his business. The new partnership (transferee), acting through SVM, one of the new partners, demanded and received a list of Guerrero's creditors. An inventory of the transferred properties was prepared. However, no effort was made by the parties to the new partnership to notify any of the creditors in writing of the bulk transfer. Oral notice was, however, given to Texas Bank of the transfer and a copy of the inventory was provided the bank, the only known secured creditor.

There is some evidence that Gamesa received oral notice of the transfer through one of its officers. The president of Gamesa denied receiving either written or oral notice of the transfer.

Nonetheless, it is undisputed that an officer of Gamesa met with members of the

new partnership to examine books, invoices and records of Gamesa involving Guerrero's transactions some time in the early part of February, 1981. During this same period Mark Girgus of SVM spoke by telephone with both, the president and an executive vice president of Gamesa, about the new partnership and about proposed purchases from Gamesa by the new entity.

The new partnership commenced doing business in early February of 1981. There followed a series of purchases by the new partnership from Gamesa. These purchases were on a cash basis (cashier's checks issued by Texas Bank) and the invoices were issued by Gamesa in the name of the new entity. During one of these transactions the invoice was incorrectly prepared in the name of West Coast Imports, Guerrero's old business, and the new partnership insisted that a corrected invoice be prepared with the new partnership name reflected as the purchaser. A new invoice was substituted by Gamesa indicating the purchaser to be Anthony's International, Ltd.

From the time Gamesa terminated credit to Guerrero in December 1980 until suit was filed, a dispute existed between Guerrero and Gamesa. Gamesa contended that Guerrero owed it money for goods sold on credit and for advances made. Guerrero denied owing Gamesa anything claiming instead that Gamesa owed him $50,000.00 for his profit, which was being collected by Gamesa under their agreement.

On March 12, 1981, Gamesa filed a lawsuit against Guerrero seeking to recover on the debt as a sworn account and seeking a writ of attachment on Guerrero's non-exempt property.

A writ of attachment was obtained and was attempted to be served and executed at the Anthony's International, Ltd. warehouse on March 12, 1981. When the writ was sought to be served, the executing officer was informed by Sam Girgus that the inventory in the warehouse belonged to Anthony's International, Ltd.

On August 21, 1981, Gamesa amended its petition to the suit against Guerrero and joined SVM as a defendant alleging a bulk transfer violation.

At the time Gamesa filed suit against SVM almost seven months had elapsed from the date of the bulk transfer.

The Bulk Transfer Act requires that the transferor in a proposed bulk transfer give the transferee a list of his existing creditors, sworn to by the transferor. TEX. BUS. & COM.CODE ANN. § 6.104 (Tex. UCC) (Vernon 1968). The same provision requires that the parties prepare a schedule of the property to be transferred, sufficient to identify it. Section 6.105 provides that a bulk transfer is ineffective against any creditor of the transferor unless notice thereof is given as provided.

Section 6.107 describes the required notice, setting out its contents and the manner in which it may be delivered to the creditors.

Section 6.111 provides that:

No action under this chapter shall be brought nor levy made more than six months after the date on which the transferee took possession of the goods unless the transfer has been concealed. If the transfer has been concealed, actions may be brought or levies made within six months after its discovery.

This section permits action to be brought within six months after discovery of the transfer if it has been concealed.

### Concealment

What constitutes concealment under the section appears to be a question of first impression in this State. In *Hurley v. Lano International, Inc.*, 569 S.W.2d 602 (Tex.Civ.App.—Texarkana 1978, writ ref'd n.r.e.) the limitations provision of section 6.111 was considered but the issue of concealment never arose. The holding of the court therein extended only as far as proclaiming a suit barred when brought more than six months from the date of transfer.

A limited number of courts from other jurisdictions have touched upon the issue of

concealment in interpreting various applications of their version of section 6.111.

In some instances it has been held that concealment embodies only affirmative efforts at concealing the transfer. *See Aluminum Shapes, Inc. v. K–A Liquidating Co.,* 290 F.Supp. 356 (W.D.Pa.1968); *Charles Adler & Son, Inc. v. Di Nunzio,* 5 U.C.C. Rep.Serv. (Callaghan) 743 (Pa.Ct.C. P.1967); *Cf. In re Borba, Lang v. Graham,* 736 F.2d 1317 (9th Cir.1984); *In re Del Norte Depot, Inc. Chartered Bank of London v. Diamant,* 716 F.2d 557 (9th Cir.1983).

In other instances it has been held that *complete failure* to comply with notice provisions was tantamount to a concealment of a transfer within the meaning of section 6.111. *See E.J. Trum, Inc. v. Blanchard Parfums, Inc.,* 33 A.D.2d 689, 306 N.Y.S.2d 316 (1969);[2] *see also McKissick v. Foremost McKesson, Inc.,* 441 F.2d 811, 8 U.C.C.Rep.Serv. (Callaghan) 301 (5th Cir.1971) (dictum); *Columbian Rope Co. v. Rinek Cordage Co.,* 314 Pa.Super. 585, 461 A.2d 312 (1983). Some legal writers have expressed the opinion that the latter position is the preferable interpretation if any effect is to be given to the concept of "concealment." The reason given for preferring the latter approach lies in the concern that affirmative concealment might be impossible to prove-up where there is *no* notice of the transfer. Otherwise, it is said, "notice can be withheld and the transferee can wait out the six months following the actual transfer in the hope that no one will learn that it had taken place until it is too late to assert an available remedy." 3A DUSENBERG–KING, SALES AND BULK TRANSFERS UNDER THE UNIFORM COMMERCIAL CODE § 15.07 (1984); J. WHITE & R. SUMMERS, UNIFORM COMMERCIAL CODE § 19–3 (2d ed. 1980). At least one writer advocates a finding of concealment only when there is evidence that the transfer has been actively hidden from the view of creditors in some manner other than merely failing to notify them that it was made. *See* W. HAWKLAND, A TRANSACTIONAL GUIDE TO THE UNIFORM COMMERCIAL CODE § 3.03, at 846 (1964).

■ We do not quarrel with a finding of concealment when the record discloses affirmative efforts by the transferor at suppressing knowledge. Moreover, we are impressed with the reasons given for finding concealment when there has been *total* nondisclosure of the transfer or complete failure to comply with the notice requirement. There is, however, the situation where the transferor fails to give the notice as required by section 6.107 but does give informal notice to his creditors so that actual knowledge of the transfer is had although there is technically noncompliance with the requisites of the statute. We believe that under this situation there has not been total nondisclosure so as to mandate a finding of concealment as a matter of law. *Columbian Rope Co.,* 461 A.2d at 312.

In the instant case the trial court held that Guerrero and SVM concealed the transfer because they failed to comply with the written notice provisions of section 6.107. The court thus concluded that Gamesa was not barred by section 6.111 from asserting its claim.

Although all the parties agree that written notice was never given the record before us belies any evidence of affirmative action at concealing the transfer. All indications are that Gamesa knew about the transfer or should have known about it through the conduct of its officers and agents in dealing with the new partnership.

On at least three occasions Gamesa did business with the new partnership immediately after the entity was formed. On one of those occasions Gamesa's employees were requested to correct an erroneous invoice to reflect the correct name of the purchaser. Furthermore, Gamesa's agent met with members of the new partnership

---

2. *Contra Aerolineas Argentinas v. Hansen & Yorke Co., Inc.,* 12 U.C.C.Rep.Serv. (Callaghan) 329 (N.Y.Civ.Ct.1973) (dictum).

less than a month after the transfer for the purpose of examining Guerrero's books. Gamesa through its officers and agents acquired actual knowledge of the bulk transfer.

We hold that the concealment as contemplated by section 6.111 occurs when the record discloses affirmative efforts at concealing the transfer and when there has been complete and total failure to comply with the notice provisions of the statute. We reject the notion that mere failure to give the written notice required by the Act amounts to concealment as a matter of law such as will toll the period set out in section 6.111.

We believe this view is more in keeping with the purpose and policy of the rule in question and with the express purposes of the legislature in adopting the Uniform Commercial Code.

Since the trial court predicated concealment solely upon a failure to comply with the required statutory notice we hold that the court erred in refusing to bar Gamesa's suit brought in excess of the statutory period provided in section 6.111.

By cross points Gamesa seeks to increase the amount of judgment granted against Guerrero and SVM. Inasmuch as we reverse the judgment as to SVM upon a holding that Gamesa was barred from bringing suit by limitations we need not address its contention that it was entitled to a larger recovery against SVM.

Gamesa did not pursue an independent appeal as to Guerrero and Guerrero did not elect to complain about the judgment rendered against him. Guerrero is, therefore, neither an appellant nor an appellee in the proceeding before us.

Furthermore, Guerrero's liability is severable from that of SVM's.

It has often been said that where an appeal is taken from a judgment of a trial court, all parties whose interest in the subject matter of the proceeding could be adversely affected by a reversal or modification of the judgment are necessary parties to the appeal. *Texas Employment Commission v. Gant, Inc.*, 604 S.W.2d 211 (Tex. Civ.App.—San Antonio 1980, no writ).

It is further recognized that an appellee may also wish to complain of some ruling or other action of the trial court during the course of an appeal which has been perfected by the opposite party. In most cases, it is not necessary for the appellee to perfect an independent appeal. TEX.R.CIV.P. 420 prescribes the procedure to be adhered to when such a situation arises.

However, where a judgment is severable and the appellant has limited the scope of his appeal to a severable portion of such judgment the appellee must perfect his own appeal before he will be heard to complain about another part of the judgment. *Dallas Electric Supply Co. v. Branum Co.*, 143 Tex. 366, 185 S.W.2d 427 (1945); *Scull v. Davis*, 434 S.W.2d 391 (Tex.Civ.App.—El Paso 1968, writ ref'd n.r. e.).

Since Gamesa has not appealed from the portion of the judgment against Guerrero now alleged to be adverse to it as asserted by cross point, this court is without jurisdiction to consider the cross point. *Barnsdall Oil Co. v. Hubbard*, 130 Tex. 476, 109 S.W.2d 960 (1937); *Cline v. Cline*, 323 S.W.2d 276 (Tex.Civ.App.—Houston 1959, writ ref'd n.r.e.).

Gamesa's cross points are overruled.

We reverse the part of the judgment appealed from entered against SVM and in favor of Gamesa for joint and several liability predicated upon a violation of the Bulk Transfers Act and render judgment that Gamesa have and recover nothing from SVM.