## Osterweil, Appellant, *v.* Crean et al.

Argued April 22, 1942. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Simon Pearl,* with him *Henry Arronson, Harry A. Rutenberg* and *Abraham T. Needleman,* for appellant.

*James E. Gallagher, Jr.,* with him *Daniel Mungall, Jr.,* and *Stradley, Ronon & Stevens,* for appellee.

PER CURIAM, May 11, 1942:

Joseph T. Morris, during a period of forty days, made a number of sales of men's clothing, in wholesale lots, to Walter Crean. Were these sales made in the ordinary course of trade and in the regular and usual prosecution of Morris's business, so that there was no necessity on the part of Crean to comply with the provisions of the Bulk Sales Act of May 23, 1919, P. L. 262? That is the question involved in the present controversy.

Plaintiff, Joseph Osterweil, is a jobber of men's clothing. As the result of sales made by him to Morris between May 7 and July 29, 1940, there is due him from Morris a net balance of $3,325.48.

Morris is a constable who was also engaged, for a period of two years preceding the fall of 1940, in the business of selling wearing apparel from his home in Ambler. He would sell one or two suits at a time to customers who came there to buy, but it was also his practice to sell suits and dresses in wholesale lots of anywhere from 50 to 100 units. He never carried what might be regarded as a permanent stock; he would buy in lots

of 100 to 250 units, would sell as much as possible of the merchandise at retail within the following two or three days, and would then dispose of the rest as a job lot to auction houses in Philadelphia. Beginning in June, 1940, he was pressed to meet trade acceptances which he had given. In order to tide over the situation he made purchases from plaintiff and other concerns and in each instance resold the merchandise, or the larger part of it, within a day or two to Crean (who conducted a retail store in Philadelphia for the sale of men's wearing apparel) or to other dealers, at prices somewhat below cost but not much, if any, lower than market value. During the period from June 19 to July 29, 1940, about ten such sales to Crean were made in lots ranging from 22 to 118 suits at an aggregate price of $5,179.25.

It being admitted that, in making the purchases from Morris, Crean did not comply with the requirements of the Bulk Sales Act, plaintiff brought a bill in equity praying that these sales be declared fraudulent and void as to him and other creditors of Morris, that Crean be held liable as a receiver for the fair value of the merchandise purchased by him, and that defendants be ordered to pay to plaintiff the amount due him. The chancellor entered a decree, sustained by the court in banc, dismissing the bill on the ground that plaintiff had not sustained the burden of proving that the sales by Morris to Crean were not within the usual course of Morris's business.

Plaintiff's appeal from the decree rests essentially upon an issue of fact which depends upon the nature of Morris's business as generally conducted by him. A careful reading of the testimony leads fairly to the conclusion that, during the entire period of two years in which he was engaged in business, he sold not only at retail but also, more or less regularly, in wholesale lots. As already stated, his practice was to buy merchandise at auction sales or from manufacturers, sell individual units so far as he could within the course of a few days,

and then dispose of the remaining portion of the lot as an entirety. The only changes he introduced during the forty days involved in the present controversy were that he resold the merchandise in lots without trying first to retail as much of it as possible, and that he did not confine such sales to auction houses but sold to Crean and similar establishments. The controlling fact is that he was never exclusively a retail merchant; within two or three days of each purchase he had always sold the balance of the lot remaining, so that, after each of such "clean-out" sales, his stock would not consist of more than 20 to 25 units and he never had on hand a larger number than that for any appreciable period of time. Plaintiff made no attempt to establish the relative quantities and values of the merchandise ordinarily sold by Morris at retail and in wholesale lots, nor did he show that the sales to Crean were substantially different or in larger amounts than those formerly made by Morris at wholesale. The court was therefore justified in finding that plaintiff failed to sustain the burden of proving that the sales to Crean were outside the ordinary course of trade and the regular and usual prosecution of Morris's business.

Plaintiff had obtained judgment pro confesso against Morris for want of an answer to the bill in equity, but the court of its own motion vacated this judgment. Equity having assumed jurisdiction of the cause, there is no reason why a decree should not have been entered against Morris for the amount due by him to plaintiff. To that extent plaintiff was entitled to relief under the prayers of his bill.

The record is remitted with directions that a decree be entered that Morris is indebted to plaintiff in the sum of $3,325.48 with interest from the due date. The dismissal of the bill as against Crean is affirmed. Costs to be divided between plaintiff and defendant Morris.