In re The **WICACO MACHINE CO., INC.,** Debtor.

**Jonathan H. GANZ,** Trustee of Wicaco Machine Corporation and the Creditors Committee of Wicaco Machine Corporation, Plaintiffs,

v.

**KOVATCH CORPORATION** and **John J. Kovatch, Jr.** and **Joseph J. Kovatch,** Defendants.

Bankruptcy No. 82–04534.
Adv. No. 83–0580G.

United States Bankruptcy Court, E.D. Pennsylvania.

Dec. 5, 1985.

Jonathan H. Ganz, Pincus, Verlin, Hahn, Reich & Goldstein, Philadelphia, Pa., for plaintiff/trustee of Wicaco Machine Corp.

Joseph A. Dworetzky, James S. Gkonos, Drinker, Biddle & Reath, Philadelphia, Pa., for Creditors' Committee.

Robert T. Yurchak, Nesquehoning, Pa., and Bruce J. Wisotsky, Philadelphia, Pa., for defendants, Kovatch Corp., John J. Kovatch, Jr. and Joseph J. Kovatch.

## OPINION

EMIL F. GOLDHABER, Chief Judge:

The primary issue at the heart of this controversy is whether a prepetition sale of a part of the debtor's assets constitutes a bulk transfer, thus enabling the trustee to demand the return of the property or its value even though the purchaser paid fair consideration. For the reasons expressed herein, we conclude that this sale qualifies as a bulk transfer and therefore the fair consideration paid by the purchaser will not prevent the trustee from avoiding the sale and demanding the return of the property.

The facts of this dispute are as follows:[1] The defendant, Kovatch Corporation ("Kovatch") signed a $10,000,000.00 contract with the United States Air Force to produce fuel trucks. Kovatch then subcontracted with Wicaco Machine Corp. ("the debtor") to provide valves and hose reels for installation in the Air Force trucks. In the ordinary course of its business, the debtor sold valves and products which it manufactured pursuant to contracts, on consignment or as standard inventory

1. This opinion constitutes the findings of fact and conclusions of law required by Bankruptcy Rule 7052.

items. It did not sell raw materials, partially manufactured goods, machinery or equipment. Under the subcontract, the debtor agreed to provide approximately $100,000.00 worth of valves and hoses each month, but because of defects in the debtor's product, it was not until nine months after the first scheduled delivery of goods under the contract that levels of production approximated $100,000.00 per month.

Just as production increased to the agreed level, the debtor informed Kovatch that it was terminating all business operations and would no longer produce valves and hoses. This decision put Kovatch's contract with the Air Force in jeopardy since the Air Force had not authorized the use of any other supplier for these valves and hoses. Kovatch immediately began negotiations with the debtor to buy all the inventory, machinery, and work in progress necessary to fulfill the Air Force contract. The parties attempted to circumvent a perceived bulk transfer problem by separating the inventory into two parts, giving Kovatch ouright ownership of the consignment inventory valued at $300,000.00. He also received an option to buy the remaining "stores and parts" inventory. The consignment inventory constituted the major portion of the debtor's entire inventory.

For $400,000.00, Kovatch purchased and removed the consignment inventory, machinery and work in progress, while not buying the "stores and parts" inventory. As soon as the debtor received payment, Palmer, the debtor's president, took the money and, with intent to defraud the debtor's creditors, paid off debts of the debtor which were personally secured by him as well as debts which were owed to companies in which he was the principal and sole employee, leaving other debts unpaid. When all money and property had been exchanged, the agreement of sale was

signed. Kovatch at no time informed any of the debtor's creditors of the sale.

On the day following the signing of the agreement, the debtor filed a petition under chapter 11 of the Bankruptcy Code ("the Code") although the case has since been converted to a chapter 7 case. Kovatch never exercised its option under the contract. Instead it purchased the remaining inventory from the bankruptcy trustee for $42,000.00.

The trustee has brought this action to avoid the sale to Kovatch of the debtor's assets including the last month's finished products. He bases his claims on 11 U.S.C. § 548 of the Code; the Pennsylvania Fraudulent Conveyance Act., Pa.Stat.Ann. tit., 39, §§ 351–363 (Purdons 1954); and Article 6 of the Uniform Commercial Code of Pennsylvania which is the Pennsylvania Bulk Transfer Act, 13 Pa.Cons.Stat. §§ 6101–6111. The claims under Pennsylvania law are being asserted through 11 U.S.C. § 544(b).[2]

We initiate our discussion with the Bulk Transfer Act which states in pertinent part as follows:

> § 6102. "Bulk transfer"; transfers of equipment; enterprises and bulk transfers subject to division
>
> (a) Definition of "bulk transfer".—A "bulk transfer" is any transfer in bulk and not in the ordinary course of the business of the transferor, of a major part of the materials, supplies, merchandise or other inventory (section 9109) of an enterprise subject to this division.
>
> (b) Transfer of equipment as bulk transfer. A transfer of a substantial part of the equipment (section 9109) of such an enterprise is a bulk transfer if it is made in connection with a bulk transfer of inventory, but not otherwise.
>
> (c) Enterprises subject to division.— The enterprises subject to this division are all those whose principal business is

2. § 544. Trustee as lien creditor and as successor to certain creditors and purchasers.
   (a) * * *
   (b) The trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is void-

able under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.
11 U.S.C. § 544(b).

the sale of merchandise from stock, including those who manufacture what they sell.

(d) Bulk transfers subject to division. —Except as limited by section 6103 (relating to transfers excepted from division) all bulk transfers of goods located within this Commonwealth are subject to this division.

The basic purpose of the Bulk Transfer Act is to protect creditors of a merchant who sells out his stock to anyone for any price, pockets the proceeds and disappears. 13 Pa.Cons.Stat.Ann. § 6102, UCC comment 2(b) (Purdon 1984). The bulk sales article is designed to prompt the dissemination of advance notice to creditors of a sale in bulk. Under § 6102(a) a transfer is in bulk only if a "major" part of the transferor's materials, supplies, merchandise or other inventory has been transferred. "Major" has been defined as meaning more than 50%. *In Re Shirts "N" Slacks, Inc.,* 4 U.C.C.R.S. 873, 874 (Bankr.E.D.Pa.1967). Kovatch placed a $300,000.00 value on the consignment inventory on its next tax return. Since the fair market value of the inventory remaining after the bulk transfer was the $42,000.00 which Kovatch paid to the trustee, by Kovatch's own figures, the inventory transferred was well over the 50% needed to constitute a "major" part of the inventory.

In Pennsylvania, the test of whether a transfer is outside the ordinary course of business is whether the sale is substantially different either in character or amount from those formerly made by the seller. *Osterweil v. Crean,* 344 Pa. 465, 26 A.2d 307 (1942). The debtor's principal business was selling finished products which it had manufactured. The transfer in question was not of finished products, but of raw materials and unfinished reels and hoses along with the machinery and equipment necessary to finish the valves and hoses to contract specifications. This was a transaction quite different from the type in which the debtor was ordinarily engaged and was outside its ordinary course of business.

The trustee also asserts that sales of finished products in the last full month of the debtor's operation should be included in the bulk transfer because it is outside the ordinary course of business. The trustee attempts to compute an average sales figure for the preceeding eight months of deliveries and compare the final month's total to that average, maintaining that, in accord with the *Osterweil* test, this difference in amount is extraordinary and therefore out of the ordinary course of business. All parties agreed that problems had plagued the debtor in manufacturing the valves and hoses and deliveries had steadily increased as the defects were overcome. The trustee's method of averaging the total deliveries for all prior months distorts the fact that these deliveries were consistent with the improved production and not substantially different in either character or amount from those formally made. We conclude that the sales of the last month of operation were not part of the bulk transfer.

On the question of whether the debtor is an enterprise subject to this statute, Kovatch maintains that the debtor is not subject to the Pennsylvania Bulk Transfer Act because its principal business was to sell merchandise which it manufactured. Under the prior Pennsylvania Bulk Sales Act, Pa.Stat.Ann. tit. 69, § 525 (Purdon 1919) (repealed), this would be a valid argument, since manufacturing businesses were deemed not to be within the purview of the Pennsylvania Bulk Sales Act. *Gitt v. Hoke,* 301 Pa. 31, 151 A. 585 (1930). When Pennsylvania passed Article 6 of the UCC, "§ 6102(c) was substantially in accord with the prior act, except that subsection [ (c) ] includes manufacturing businesses which have been held not subject to the [prior] Pennsylvania statute." 13 Pa.Cons.Stat. Ann. § 6102, Historical note, Pennsylvania Bar Association Notes 1953 (Purdon 1984). Thus, we conclude that a bulk transfer occurred.

Since the debtor effected a bulk transfer, Kovatch was required to notify the debtor's creditors of that transfer. 13

Pa.Const.Stat. §§ 6103, 6105, 6107; *Columbian Rope Company v. Rinek Cordage Company*, 314 Pa.Super. 585, 461 A.2d 312 (1983). Kovatch failed to comply and under § 6104 the penalty for this failure is severe. We conclude that under the Bulk Transfer Act the trustee can either demand the return of the transferred property or its value.

The trustee has also predicated relief under 11 U.S.C. § 548(a)(1) of the Code which is the fraudulent transfer provision. The measure of relief under this section of the Code is no greater than under the Bulk Transfer Act, but for the possible exception of the transfer of goods made during the last month of the debtor's operations. Section 548(a)(1) states that:

§ 548. Fraudulent transfers and obligations.

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred within one year before the date of the filing of the petition, if the debtor—

(1) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer oc-

curred or such obligation was incurred, indebted [.][3]

11 U.S.C. § 548(a)(1). We stated above that the transfer of those goods did not constitute a part of the bulk transfer. Under § 548(a)(1) the trustee has failed to prove actual intent to hinder, delay, or defraud as is required for the trustee to establish that the goods sold within the last month of operations were fraudulently conveyed within the meaning of § 548(a)(1). We likewise conclude that no greater relief may be afforded under Pennsylvania's Fraudulent Conveyance Act.

In sum, we grant the trustee's request for relief under the Pennsylvania Bulk Transfer Act and set aside the transfer of the consignment inventory, machinery and equipment valued at $400,000.00. We deny the trustee's request for the inclusion of the value of the last month's finished products or interest on the transferred assets.

As our final issue, the trustee requests prejudgment interest. In certain instances, Pennsylvania law allows for such interest under Pa.R.Civ.Pro. 238. Rule 238[4] is a state rule of decision binding on federal courts sitting in Pennsylvania in the absence of a contravening federal statute or

**3.** Section 548 was amended by the Bankruptcy Amendments and Federal Judgeship act of 1984, Pub.L. No. 98–353, July 10, 1984, but the amendment is without effect in this action since the petition was filed prior to the running of the ninety day transition period following the enactment of the amendment. *See,* Pub.L. No. 98–353, § 553(a) (effective date of amendment). Thus, we have reproduced § 548 as it stood prior to the passage of the amendment.

**4.** Rule 238. Award of Damages for Delay in an Action for Bodily Injury, Death or Property damage

(a) Except as provided in subdivision (e), in an action seeking monetary relief for bodily injury, death or property damage, or any combination thereof, the court or the arbitrators appointed under the Arbitration Act of June 16, 1836, P.L. 715, as amended, 5 P.S. § 30 et seq., or the Health Care Services Malpractice Act of October 15, 1975, P.L. 390, 40 P.S. § 1301.101 et seq., shall

(1) add to the amount of compensatory damages in the award of the arbitrators, in

the verdict of a jury, or in the court's decision in a nonjury trial, damages for delay at ten (10) percent per annum, not compounded, which shall become part of the award, verdict or decision;

(2) compute the damages for delay from the date the plaintiff filed the initial complaint in the action or from a date one year after the accrual of the cause of action, whichever is later, up to the date of the award, verdict, or decision.

\*     \*     \*     \*     \*     \*

(e) If a defendant at any time prior to trial makes a written offer of settlement in a specified sum with prompt cash payment to the plaintiff, and continues that offer in effect until commencement of trial, but the offer is not accepted and the plaintiff does not recover by award, verdict or decision, exclusive of damages for delay, more than 125 percent of the offer, the court or the arbitrators shall not award damages for delay for the period after the date the offer was made.

\*     \*     \*     \*     \*     \*

Pa.R.Civ.Pro. 238.

policy. *Jarvis v. Johnson,* 668 F.2d 740 (3d Cir.1982). We have reviewed Rule 238 in light of the three causes of action asserted here and conclude that the rule is inapplicable here. We will consequently deny the trustee's request for prejudgment interest.