**WILLIAM BAILEY, Plaintiff**

**v.**

**NORTH SAILS CARIBBEAN, INC., d/b/a BANK SAILS and WEST RAY, INC., d/b/a BANK SAILS, Defendants**

Civil No. 1146/1991

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

September 9, 1993

WILLIAM BAILEY, St. Thomas, V.I., *Pro Se*

JEWEL L. COOPER, ESQ. (COOPER & GROVES, P.C.), St. Thomas, V.I., *for defendants*

MEYERS, *Judge*

## MEMORANDUM OPINION

Plaintiff William Bailey (Bailey) instituted this action for debt to secure fees allegedly owed to him pursuant to a consulting agreement he entered into with Defendant North Sails Caribbean, Inc., d/b/a Banks Sails (North Sails).[1] Because North Sails has since sold its assets to Defendant Westray Corporation d/b/a Banks Sails (Westray),[2] Plaintiff seeks to hold Westray jointly and severally liable for the fees owed pursuant to Article 6 of the Uniform Commercial Code.[3] Westray contends that Article 6 is not applicable to the transfer, and, therefore, it is neither obligated to comply with its provisions nor obligated to pay North Sails' debt to Bailey.

The matter was tried before the court sitting without a jury on December 17, 1992. At the trial, Westray moved to dismiss the case. For the following reasons, the court holds that Article 6 of the UCC is not applicable to the transfer at issue. Westray's motion to dismiss the complaint, therefore, will be granted.

---

[1] It appears that North Sails was not properly served with a summons and a copy of the Complaint. Therefore, this action is dismissed without prejudice as against North Sails, and Plaintiff proceeds solely against Defendant Westray.

[2] The court notes from pleadings that the correct name of Defendant West Ray, Inc., is Westray Corporation.

[3] The Uniform Commercial Code is codified at 11A VIC Section 1-101 et seq., and Article 6 at 11A VIC Section 6-101 et seq.

## PROCEDURAL HISTORY AND FACTS

North Sails was a Virgin Islands corporation engaged in the business of operating a sail loft under the trade name Banks Sails Caribbean. Banks Sails, Ltd., a British corporation engaged in the business of sail manufacture, is affiliated with several sail lofts around the world which it permits to use the trade name Bruce Banks Sails. North Sails was one of those affiliates.

In August of 1989, North Sails entered into a consulting agreement with Bailey, its former president and shareholder. The consulting agreement provided that Bailey be paid Ten Thousand Dollars ($10,000.00) in quarterly installments of Two Thousand Five Hundred Dollars ($2,500.00) plus six percent (6%) commission on sales made for North Sails. In addition, North Sails was to provide Bailey and his family with medical insurance. In return, Bailey was to provide "advice and consultation on selling, manufacturing, marketing or promoting sails" and to visit boats for the purpose of assessing the "progress and quality of the [sails]." (Plaintiff's Exhibit I Consultant Agreement).

Both parties agree that by the spring and summer of 1991, North Sails' financial position was extremely poor. Employees were leaving because they had not been paid, employment taxes were not being paid, and work in progress had been halted because the business could not afford to buy materials to complete orders. Richard Allen, Vice-president of Westray and former manager of North Sails, testified that by the summer of 1991, suppliers would sell materials to North Sails only on a cash on delivery basis.

During the summer of 1991, North Sails negotiated for the sale of its assets. North Sails' manager, Richard Allen, with Banks Sails, Ltd., formed Westray Corporation for the purpose of purchasing North Sails' assets, including its trade name. Banks Sails was to finance the purchase and offered Mr. Allen twenty-five percent (25%) of the business for his efforts in organizing and operating Westray.

On August 29, 1991, J.D. Abouchar, as President of North Sails, and David Banks, as President of Westray, executed a purchase agreement by which Westray acquired certain assets of North Sails including office equipment, work in progress, accounts receivable, its lease, and its trade name for the purchase price of Seventy-Nine Thousand Seven Hundred Sixty-Six Dollars ($79,766.00).

Some of Plaintiff's exhibits include letters to J.D. Abouchar and his attorney demanding payment of Mr. Abouchar's "contractual obligations to [Bailey]." Plaintiff was unable to get any response from Mr. Abouchar. Plaintiff's Exhibit 5 is a letter from Bailey to David Banks, Westray's president, requesting payment on the consultation agreement entered into by North Sails. This letter refers to an earlier telephone conversation between Bailey and Mr. Banks in which Mr. Banks apparently refused to pay the debt.[4]

Bailey filed this action for debt in the Small Claims Division of this court On October 11, 1991, asserting that North Sails and Westray are jointly and severally liable on this contract debt pursuant to Article 6 of the Uniform Commercial Code. Westray, through its attorney, moved to transfer this action to the Civil Division. The motion was granted on December 23, 1991. Westray denies that it is obligated to pay North Sails' contract debt to Plaintiff. Westray contends that its purchase of North Sails' assets is not subject to Article 6 of the Uniform Commercial Code, and, therefore, Westray is not obligated to pay North Sails' debt to Bailey.

## DISCUSSION

A bulk transfer is defined in 11A V.I.C. Section 6-102 (1) as "any transfer in bulk and not in the ordinary course of the transferor's business of a major part of the materials, supplies, merchandise or other inventory of an enterprise subject to this article." The enterprises subject to Article 6 are "all those whose principal business is the sale of merchandise from stock, including those who manufacture what they sell." 11A V.I.C. Section 6-102(3).

A transfer in bulk which is subject to Article 6 must meet certain statutory requirements. Specifically, the transferee must have the transferor furnish a list of its creditors and a schedule of the property to be transferred. This list and schedule are to be preserved or filed for a period of six months. 11A V.I.C. Section 6-104. In addition, notice must be given by the transferee to the creditors listed at least ten days before the transferee takes possession of the goods or is scheduled to pay for them. 11 V.I.C. Section 6-105.

If the transferee fails to fulfill the notice requirements, the transfer will be held ineffective against certain creditors of the trans-

---

[4] Bailey contends that pursuant to the terms of the agreement, a principal balance of $5,000.00 remains due and owing.

feror. Thus the creditors may proceed against the transferred property as if it were held by the transferor, or seek personal liability against the transferee for the value of the goods. Sbar's Inc. v. New Jersey Art & Craft Distributors, Inc., 501 A.2d 560 (N.J. 1985); See 47 ALR 3d 1114: UCC Bulk Transfers.

Both parties agree that North Sails' inventory was transferred to Westray. This inventory included that value of work in progress. 11A V.I.C. Section 9-109. Therefore, the transfer at issue would constitute a bulk transfer if North Sails were an enterprise subject to Article 6.

Bailey contends that North Sails falls within the purview of Article 6 because its principal business was to sell sails which it manufactured. Westray, on the other hand, contends that North Sails' principal business, particularly in the final months of its existence, was to repair sails. Because our research revealed no local case law interpreting Article 6, this court will look to other jurisdictions for guidance.

The Uniform Laws Comments to 11A V.I.C. Section 6-102 are instructive on the issue of the types of enterprises covered by Article 6. Businesses falling under Article 6 "do not include farming nor contracting nor professional services, nor such things as cleaning shops, barber shops, pool halls, hotels, restaurants, and the like whose principal business is the sale not of merchandise but of services. While some bulk sales risk exists in the excluded businesses, they have in common the fact that unsecured credit is not commonly extended on the faith of a stock of merchandise." 11A V.I.C. Section 6-102, Uniform Laws Comments.

North Sails was engaged in the sail loft business. As such, it did not keep a stock of merchandise for sale, but often custom ordered canvas to the specifications of the job at hand. North Sails did keep some canvas stock on the premises, but this stock of canvas was not sold until it had been made into items such as sails and awnings. There was no stock of sails, awnings or other finished product kept in inventory.

The bulk sales acts on which Article 6 is based exempted businesses whose stock on hand was considered incidental because the principal factors involved were labor and mechanical skill. 168 ALR 737. Traditionally, Article 6 has not been applied to items which were to undergo processing or to items to which labor was added before being placed in the market. See Berger v. Berger, 73 N.W.2d 503 (Wis. 1955).

■ In view of the foregoing, a sail loft is not an enterprise subject to bulk sales law in that it buys raw canvas from a manufacturer or wholesaler and, with the addition of the labor and skill of its employees, transforms the canvas into sails, awnings, or whatever custom-made item is requested. See Berger, Supra.

■ In addition, a large portion of Westray's business consisted of repair work of various canvas items. Such repair work has generally been held to be service business and thus specifically excluded from the purview of Article 6. In Allsbrook v. Azalea Radiator Service, 316 S.E.2d 743 (Va. 1984), the court held that the sale of a business engaged in servicing and repairing radiators was the sale of a service enterprise and thus exempt from Article 6, even though the business maintained a stock of minor radiator parts and ordered major parts when they were needed. In HPS, Inc. of Florida v. Willis, 483 So.2d 767 (Fla.App. 1986), the court held as a matter of law that a print shop business was not subject to Article 6 because, although it sold some items from stock, "its *principal* business is providing a service rather than selling merchandise from stock and is not the type of business concerning which a creditor would normally extend unsecured credit relying on the value of a stock of merchandise or inventory held for sale." Id., at p. 768. (Emphasis supplied). Similarly, in Mix v. Gem Investors, Inc., 647 P.2d 811 (Idaho App. 1982), the court exempted the sale of an airline from Article 6 because its principal business was one of service.

Service enterprises have been excluded from the provisions of Article 6 because they are the types of businesses to which unsecured credit is not commonly extended on the faith of a stock of merchandise. 11A V.I.C. Section 6-102, Uniform Laws Comments. In the majority of the cases, the courts have dealt with the transfers of hotels, restaurants, and bars when exempting enterprises as being service oriented, and have concluded that these are not the types of businesses to which unsecured credit is commonly extended on the faith of a stock of merchandise.[5]

---

[5] See for example De la Rosa v. Tropical Sandwiches, Inc., 298 So.2d 471 (Fla.App. 1974), Cert. denied 312 So.2d 760 (Fla. 1975); Kane-Miller Corp. v. Tip Tree Corp., 60 Misc.2d 776 (N.Y. Sup. Ct. 1969); Kentucky Club, Inc. v. Fifth Third Bank, 590 S.W.2d 686 (Ky. 1979); ABM Escrow Closing v. Matanuska Maid, Inc., 659 P.2d 1170 (Alaska 1983).

■ The test, therefore, is whether creditors extend credit in reliance upon the inventory of the debtor as security. Bailey offered no evidence to the effect that he relied on North Sails' inventory as security for his consulting fees when he entered into the contract. Richard Allen, Vice-President of Westray and former manager of North Sails, testified that the major part of North Sails' business was service oriented repair work and that much of its inventory was raw materials which were custom ordered to job specifications. In the final months of North Sails' existence there was little raw canvas in inventory due to the cash shortage the business was experiencing. Several orders were left unfinished because North Sails could not afford to purchase materials to complete them. In these final months, North Sails made fewer sails and canvas items and increased its repair work. Suppliers were not extending credit, but were shipping supplies on a cash on delivery basis.

■ Further, this court finds that Bailey is not the type of creditor to which Article 6 affords protection. His action is primarily one for breach of the consulting contract by North Sails. The underlying policy of Article 6 is to protect creditors who sell goods and merchandise to others on credit for inventory and resale. Anderson & Clayton Co. v. Earnest, 610 S.W.2d 846 (Tex.Civ.App. 1980). Bailey, however, seeks payment for breach of a personal service contract.

In Silco Automatic Vending Co. v. Howells, 253 A.2d 765 (N.J. 1968), the court held that the lessee of tavern space for his vending machines could not seek the protection of Article 6 upon the sale of the tavern since his action for breach of contract did not make him a creditor under Section 6-109. See also Aluminum Shapes, Inc. v. K-A-Liquidating Co., 290 F.Supp. 356 (D.C.Pa. 1968). Similarly, Bailey's cause of action, the basis for which is breach of contract, does not elevate his status to that of a creditor shielded by Article 6. Bailey had the burden to establish that the transfer of assets was in bulk and that he fell within the provisions of and was protected by Article 6. Berger, Johnson and Olson v. Verco Mfg. Co., 690 S.W.2d 115 (Tex.App. 1985). He failed to carry his burden.

In addition, Article 6 is intended to give creditors notice of an impending bulk sale so that they may take steps to protect their interests. In April of 1991, Bailey agreed to act as North Sails' realtor, in conjunction with John Foster Real Estate, for the purpose of selling the corporation. (Plaintiff's Exhibit 6). Thus, Bailey had per-

9

sonal knowledge that a sale or transfer was planned. Moreover, Bailey threatened to take legal action against North Sails and/or its president and sole shareholder, J.D. Abouchar, if his fees were not paid prior to the sale of the corporation. (See Plaintiff's Exhibits 2, 3 and 4). Although Bailey had the opportunity to take appropriate action against North Sails and/or J.D. Abouchar, he did not do so.

## CONCLUSION

■ Accordingly, the court concludes that the transfer of assets from North Sails to Westray is not subject to Article 6 of the Uniform Commercial Code concerning bulk transfers. The principal factors involved in transforming the raw canvas into sails and awnings was the addition of the labor and skill of North Sails' employees. Further, North Sails' business was primarily service oriented in that repairs constituted a major portion of its operations, and credit was not extended in reliance upon its inventory. Moreover, Bailey, in this action to recover for North Sails' alleged breach of contract, is not the type of creditor to which Article 6 affords protection. Defendant Westray's motion to dismiss will, therefore, be granted.

## ORDER

In accordance with the Memorandum Opinion of even date, it is hereby

ORDERED that Defendant Westray's Motion to Dismiss be and the same is GRANTED.